## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Enrique Chavez and Emma Sheikh, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DePaul University and Board of Trustees of DePaul University,<br><br>Defendants | Civil Action No. _____<br><br>**ORIGINAL CLASS ACTION COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Enrique Chavez and Emma Sheikh ("Plaintiffs"), individually and on behalf of all other similarly situated students (collectively, the "Class," as more fully defined below), bring this class action complaint against DePaul University ("DePaul") and the Board of Trustees of DePaul University (the "Board of Trustees") (collectively, "Defendants"). Plaintiffs make the following allegations upon personal knowledge as to their own acts, and upon information and belief and their attorneys' investigation as to all other matters.

## NATURE OF THE ACTION

1.       This is a class action brought by Plaintiffs on behalf of themselves and other graduate and undergraduate students of DePaul University who paid in full for their tuition charges for the Spring 2020 academic Quarter, Summer 2020 Term, and/or Summer 2020 Sessions. These students have not been refunded or reimbursed a pro-rated portion of the tuition expenses for the educational and other services they did not and will not receive after they were forced to leave campus when DePaul University abruptly closed its doors to students due to the Coronavirus Disease 2019 ("COVID-19").

2.      Plaintiffs and the other proposed Class members are students who paid tuition for the Spring 2020 Quarter, Summer 2020 Term, and/or Summer 2020 Sessions at DePaul University and have not received refunds or reimbursement for the decreased value of the education that DePaul has provided them since their classes transitioned from in-person instruction to an entirely remote learning, online format.

3.      Specifically, as a result of Defendants' wrongful acts and unfair business practices alleged herein, Plaintiffs and the proposed Class (i) have not received any refund or reimbursement for the unused services for which they paid; and/or (ii) did not receive any refund or reimbursement for the decreased value of the education they received from DePaul when their classes transitioned from in-person instruction at the DePaul campus facilities to an entirely remote, online learning format.

4.      Comprised of ten colleges and schools across two campuses, both of which are located in Chicago, Illinois, DePaul caters to both undergraduate and graduate students. DePaul University currently boasts that it serves 14,507 undergraduate students and 7,930 graduate students. Undergraduate students can select from over 130 majors, while graduate students can enroll in one of more than 175 graduate programs.

5.      The cost of attending DePaul University differs significantly depending on the student's program, date of enrollment, and living situation. By way of example, an undergraduate student who began attending the Richard H. Driehaus College of Business, College of Computing & Digital Media, and College of Science & Health in 2019 pays $13,517 in tuition per term, or $40,551 for the three-term 2019-20 academic year. Meanwhile, a full-time student entering the DePaul University College of Law—which, unlike other programs, is on a

semester schedule—in 2019 pays $24,335 per semester or $48,670 per year. In addition, students pay a variety of mandatory fees, such as a Student Activity Fee and Athletic Fee.

6.      DePaul University is the nation's largest Catholic university and the thirteenth largest private university in the U.S. [1] DePaul's budget for the 2019 to 2020 academic year is $568 million.[2] As of 2019, DePaul had a $696.5 million endowment.[3]

7.      On March 11, 2020, DePaul announced its intention to suspend all in-person final exams for the Winter 2020 Quarter, cancel or postpone all University-sponsored events, and, "[w]henever possible," deliver all classes remotely during the Spring 2020 Quarter and, for the law school, the remainder of Spring 2020 Semester. Additionally, at this time, DePaul announced that students who live in residence halls "should prepare not to return for Spring Quarter." On or around March 13, 2020, DePaul reiterated that "[s]tudents should plan on all Spring Quarter courses moving online" and that "in-person courses in Spring will be a rare occurrence."

8.      In the following days, DePaul alerted students that certain buildings would be closed and certain services would be reduced or suspended altogether. On March 20, 2020, DePaul announced that, effective March 21, "with minor exceptions, all buildings on both campuses will be locked down."

9.      DePaul's Winter 2020 Quarter concluded on March 20, 2020, followed by Spring Break from March 21 to March 27, 2020. Since the Spring 2020 Quarter began on March 28, 2020, DePaul University has not held any in-person classes. Instead, DePaul has offered only

---

[1] *About DePaul*, DePaul University, https://offices.depaul.edu/university-marketing-communications/facts-stats/Pages/about-depaul.aspx (last visited May 11, 2020).
[2] *Id.*
[3] *U.S. and Canadian Institutions Listed by Fiscal Year (FY) 2019 Endowment Market Value and Change in Endowment Market Value*, National Association of College and University Business Officers and TIAA (February 2020), https://www.nacubo.org/-/media/Nacubo/Documents/EndowmentFiles/2019-Endowment-Market-Values--Final-Feb-10.ashx? (last visited May 11, 2020).

online classes, which are less valuable than the in-person instruction which thousands of DePaul University students had selected. As a result of the closure of the DePaul University campuses, Defendants have not provided the education, services, facilities, technology, access, or opportunities for which Plaintiffs and the other DePaul students paid.

10. According to *Forbes*, DePaul University is expected to receive at least $14 million in relief from the federal government as part of the federal stimulus bill designed to ease the impact of COVID-19.[4] This means that DePaul University will receive the tenth-largest sum of federal aid among private, non-profit institutions.[5]

11. Despite receiving this influx of federal funds, Defendants refuse to refund or reimburse Plaintiffs and similarly situated DePaul University students for tuition for online classes that DePaul is currently offering to them that are substantially less valuable than the in-person classes for which the students enrolled. Although students' education has been diminished with the forced shift to online learning, DePaul University campuses have been closed to their students since March 21, 2020, and all Spring 2020 Quarter classes have been held online, Defendants have charged students the full cost of tuition for Spring 2020 Quarter or Semester.[6]

12. In response to DePaul's refusal to issue adequate refunds to students whose education and services have been interrupted by the school's closure and move to online instruction, over 5,700 people have signed an online petition at www.change.org requesting that

---

[4] Wesley Whistle, *The Colleges Getting The Most Money From The Stimulus Bill,* Forbes (Apr 10, 2020), https://www.forbes.com/sites/wesleywhistle/2020/04/10/the-colleges-getting-the-most-money-from-the-stimulus-bill/#68ffa5c93686 (last visited May 11, 2020).
[5] Brita Hunegs and Ella Lee, *DePaul to receive 10th-largest sum of aid among private non-profit institutions from CARES Act*, The DePaulia (April 20, 2020), https://depauliaonline.com/47960/news/depaul-to-receive-10th-largest-sum-of-aid-among-private-non-profit-institutions-from-care-act/ (last visited May 11, 2020).
[6] *DePaul Covid-19 Update*, DePaul University (March 13, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-13-2020-student.aspx (last visited May 11, 2020).

DePaul decrease tuition for the Spring 2020 Quarter because "the educational services offered [for the Spring 2020 Quarter] are not equal to services rendered" in on-campus instruction.[7]

13.     Plaintiffs and the students in the proposed Class have been deprived of the full benefits of the in-person courses, University services, and other services, accommodations, and experiences for which they paid exorbitant rates. Defendants are currently unlawfully retaining funds that students in the proposed Class paid for the Spring 2020 Quarter or Semester, Summer 2020 Term, and Summer 2020 Sessions for tuition—and for the "educational experience" marketed to them by Defendants—given that DePaul is either failing to provide paid-for services and opportunities altogether or is providing them at a dramatically lower quality than that which was represented to students. Essentially, students have paid DePaul for hands-on classroom instruction and experiences in which they can no longer engage, learning facilities they can no longer enter, and academic resources they can no longer access. Defendants are thus profiting from COVID-19, asking students and their families—many of whom have been laid off, become ill, or are otherwise suffering significantly—to bear the financial brunt of the pandemic. Both contract and equity demand that Defendants disgorge these funds.

14.     Plaintiffs and similarly situated DePaul University students are entitled to have Defendants disgorge the portions of their payments for substandard classes and have those payments refunded to them. Plaintiffs bring this class action for monetary damages and injunctive, declaratory, and equitable relief, and any other available remedies, resulting from Defendants' illegal, inequitable, and unfair retention of the funds paid by Plaintiffs and the other students in the proposed Class.

---

[7] Ethan Ng, *Lower Tuition for DePaul University after spring classes shifted to online*, Change.org (March 2020), https://www.change.org/p/depaul-university-lower-tuition-for-colleges-after-making-all-classes-online (last visited May 11, 2020).

15. Specifically, this lawsuit seeks disgorgement of the pro-rated amounts of tuition charges that Plaintiffs and the other Class members paid, for which they will not be provided the services, benefits, or products they paid to receive, including the difference in value between the live in-person classes for which 2020 Spring Quarter or Semester, Summer 2020 Term, and Summer 2020 Session students enrolled and paid, compared to the lesser online versions of classes DePaul University has been providing to them since late-March 2020.

## PARTIES

### A. Plaintiffs

16. Plaintiff Enrique Chavez is a resident of Chicago, Illinois. Mr. Chavez is a senior undergraduate student studying psychology at DePaul University's Lincoln Park campus in Chicago. Mr. Chavez is enrolled in classes and paid the required tuition and fees for the DePaul University Spring 2020 Quarter. Mr. Chavez paid $13,160 in tuition for the Spring 2020 Quarter. In addition, Mr. Chavez paid DePaul University's mandatory undergraduate student fees for the Spring 2020 Quarter including a $27 Student Activity Fee, a $25 Athletic Fee, and a $105 public transit fee. Mr. Chavez received financial aid for a portion of these fees and took out student loans and used personal funds to cover the remaining costs. Mr. Chavez has neither received nor been offered any refund or reimbursement for the tuition or fees that he has paid for the Spring 2020 Quarter at DePaul.

17. Plaintiff Emma Sheikh is a resident of Chicago, Illinois. Ms. Sheikh is a first-year Master's degree student studying elementary education at DePaul University's College of Education graduate program at the DePaul Lincoln Park campus in Chicago. Ms. Sheikh is enrolled in classes and paid the required tuition and fees for the DePaul University Spring 2020 Quarter. Ms. Sheikh paid $8,515 in tuition for the Spring 2020 Quarter. In addition, Ms. Sheikh paid DePaul University's mandatory graduate student fees for the Spring 2020 Quarter including

a $25 Athletic Fee and a $105 public transit fee. Ms. Sheikh paid for tuition and fees with her own funds and in part by taking out student loans. Ms. Sheikh has neither received nor been offered any refund or reimbursement for the tuition or fees that she has paid for the Spring 2020 Quarter at DePaul. Ms. Sheikh is also enrolled in courses for DePaul's Summer Session 1, which is scheduled to begin on June 15 and conclude on July 19, 2020.

### B. Defendants

18.     Defendant DePaul University is a private university organized under the Illinois General Not for Profit Corporation Act, 805 ILCS 105, *et seq*., with its principal place of business in Chicago, Illinois.

19.     Defendant DePaul University is governed by Defendant Board of Trustees of DePaul University. The Board has approximately 35 voting members. The Board's principal place of business is in Chicago, Illinois.

### JURISDICTION AND VENUE

20.     This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interests and costs, and because at least one member of the Class defined below is a citizen of a state other than Illinois.

21.     This Court has personal jurisdiction over Defendants because Defendants maintain their principal place of business in this District.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Plaintiffs and Defendants reside in this District and are residents of the state of Illinois.

## FACTUAL ALLEGATIONS

### A. DePaul University Markets a Unique Educational Experience

23.     With two Chicago campuses—the flagship Lincoln Park Campus and the Loop Campus—DePaul University offers more than 300 undergraduate majors and graduate programs to more than 22,000 students. In addition to offering varied course and program offerings, DePaul attracts students by marketing its robust student life and campus culture. For example, DePaul reports having "more than 350 student organizations dedicated to community service, student government, professional development, recreational sports and more" and encourages students to volunteer through community-based organizations.

24.     DePaul further markets itself and justifies its high tuition cost by stressing the vitality of its "educational experience," which "weaves together mind, place, people and heart."[8] In particular, DePaul stresses that the school's backdrop of Chicago is integral to students' experiences: "At DePaul, your 'college town' is the entire city of Chicago — and it's all yours to explore."[9] DePaul's website proclaims that, "Going to school at DePaul means living in Chicago (or very close if you're commuting). And Chicago has endless opportunities to play and learn. It's definitely big, but it's also known for Midwestern friendliness, a strong sense of community, and its ethnic diversity, food and culture."[10] Indeed, DePaul's homepage boldly claims: "Chicago is Our Classroom, The World is Our Focus."[11]

---

[8] *About*, DePaul University, https://www.depaul.edu/about/Pages/default.aspx (last visited May 11, 2020).
[9] *Campuses: Choose a lively neighborhood or the heart of the city – or better yet, both,* DePaul University, https://www.depaul.edu/about/campuses/Pages/default.aspx (last visited May 11, 2020).
[10] *Home Sweet DePaul – What's it like to be a student here?*, DePaul University, https://www.depaul.edu/student-life/Pages/default.aspx (last visited May 11, 2020).
[11] *An Urban Education, a Global Perspective*, DePaul University, https://www.depaul.edu/Pages/default.aspx (last visited May 11, 2020).

25. Additionally, DePaul markets its hands-on approach to instruction. As the DePaul University admissions website boasts, "There are a million reasons you might apply to DePaul, but one is certain: here you'll learn by doing."[12] For instance, graduate students are told that they will have the opportunity to "[l]everage the city of Chicago [and] build community connections"[13] and DePaul's Career Center claims that 64% of graduates complete an internship while in school.[14]

26. The majority of programs at DePaul University are on a quarter system. The Winter 2020 Quarter concluded on March 20, 2020 and the Spring 2020 Quarter resumed on March 28, 2020. Finals for DePaul's Spring 2020 Quarter were scheduled to occur between June 6 and June 12, 2020, with commencement scheduled to take place on June 13 and June 14, 2020. For law students, the Spring 2020 semester began on January 13, 2020 and was scheduled to culminate in final exams from May 4 to 14, 2020 and commencement on May 16, 2020.

27. For summer courses, DePaul offers a ten-week Summer Term as well as two separate five-week Summer Sessions. The 2020 Summer Term is scheduled to commence on June 15, 2020, and will conclude on August 23, 2020. The first Summer Session begins on June 15, 2020, and ends on July 19, 2020, and the second Summer Session begins on July 20, 2020, and concludes on August 23, 2020.

## B. *Life at DePaul University was Upended by the Coronavirus Pandemic*

28. However, for DePaul's graduate and undergraduate students, the Spring 2020 Quarter (or Semester, for law students) has not proceeded as planned.

---

[12] *Admission and Aid*, DePaul University, https://www.depaul.edu/admission-and-aid/Pages/default.aspx (last visited May 11, 2020).
[13] *Id.*
[14] *Career Success – DePaul Grads are Ready to Succeed,* DePaul University, https://www.depaul.edu/academics/Pages/career-success.aspx (last visited May 11, 2020).

29.     Beginning in January 2020, America faced a national crisis as cities, states, towns, business and all types of schools, colleges, and universities when the COVID-19 threat reached our shores. By March 2020, many areas of the United States began implementing social distancing measures in an effort to slow the spread of COVID-19 and maintain and protect our hospitals, medical personnel, and vulnerable populations.

30.     In mid-March 2020, thousands of DePaul University students were in the midst of final exams for the Winter 2020 Quarter, preparing for spring break, and looking ahead to the Spring 2020 Quarter. However, on March 11, 2020, DePaul University President A. Gabriel Esteban, Ph.D. sent a broadcast email to all DePaul University students, announcing that (1) all in-person final exams for the Winter 2020 Quarter would be suspended, (2) all University-sponsored events would be postponed or canceled, and (3) "[w]henever possible," DePaul would deliver all classes remotely during the Spring 2020 Quarter and, for the law school, the remainder of Spring 2020 Semester. Additionally, the email advised that "[s]tudents who live in residence halls should prepare not to return for Spring Quarter."

31.     Two days later, on March 13, 2020, DePaul University students received another message, reiterating that they "should plan on all Spring Quarter courses moving online." The broadcast email from DePaul University's Executive Vice President, Interim Provost, and Vice President of Student Affairs announced: "Only a very, very small number of courses will continue to meet in person. In other words, in-person courses in Spring will be a rare occurrence. Your Spring Quarter professors will reach out to you with more information."

32.     In the following days, DePaul announced additional closures of campus buildings and reductions of campus services. On March 20, 2020, DePaul revealed that, effective March 21, "with minor exceptions, all buildings on both campuses will be locked down."

33.     Since the Spring 2020 Quarter began on March 28, 2020, DePaul University has not held any in-person classes. Instead, DePaul has "shift[ed] to remote delivery of courses," which Defendants recognize "certainly is an abrupt change from the usual way DePaul operates."[15]

34.     On April 6, 2020, DePaul announced that all Summer 2020 courses will be delivered remotely.[16]

### C. DePaul University Has Failed to Reimburse Students for Substandard Online Instruction

35.     Yet, despite this "abrupt change," Defendants refuse to issue refunds to DePaul University students for the substandard "educational experience" that they are now receiving due to the forced transition to online learning.

36.     The remote learning, online classes are a shadow of the classes that had been offered to DePaul University students prior to the campus closures. This is particularly true for disciplines and courses of instruction such as the arts and laboratory-based sciences, where hands-on, in-person instruction is the norm—and, in reality, a necessity. Indeed, DePaul admitted in its March 11 email to students that, for some courses, online learning would "not [be] appropriate."[17]

37.     In fact, Defendants have repeatedly acknowledged that online classes do not provide DePaul University students with the education for which they had signed up.

---

[15] *Provost message to students with Spring course information*, DePaul University (March 23, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-23-20-provost-message.aspx (last visited May 11, 2020)

[16] *Interim provost to faculty: Summer update, teaching resources and band-width limitations*, DePaul University (April 6, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/4-6-20-faculty-update-from-provost.aspx (last visited May 11, 2020).

[17] *All-university details on significant changes to Winter final exams and Spring Quarter*, DePaul University (March 11, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/03-11-2020-all-university.aspx (last visited May 11, 2020).

38.     For example, in an email to DePaul University students on March 23, 2020, DePaul's Interim Provost, Salma Ghanem, wrote that "this isn't the year any of us expected" and that faculty "are finding creative solutions" to execute online learning effectively.[18] Further, in this email, DePaul recognized that "there will be cases where remote instruction is a far different experience than the classroom instruction to which students are accustomed."[19]

39.     In an email to faculty on March 30, 2020, Interim Provost Ghanem all but admitted that DePaul University students were paying the full cost of tuition for what is a glorified trial-and-error. The email noted: "now we embark on our unintended experiment with universal remote learning."[20] Interim Provost Ghanem went on to acknowledge that, for the previous week, the goal for faculty had merely been to "get [] courses up and running as best [they] can."[21] The email also offered faculty "tips for features [they] might try."[22] Finally, DePaul encouraged faculty to "test out what works for [them], and what doesn't" when it comes to online instruction.[23]

40.     Through these communications, DePaul acknowledged that University faculty are not prepared to teach virtually, or at least not to do so well. Defendants have conceded that DePaul's delivery of instruction for the Spring 2020 Quarter and Semester would be experimental, even admitted that online learning would be inappropriate for some courses, and communicated that University faculty are merely expected to try their best.

---

[18] *Provost message to students with Spring course information*, DePaul University (March 23, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-23-20-provost-message.aspx (last visited May 11, 2020).
[19] *Id.*
[20] *Interim provost shares more resources, best practices and Spring Quarter updates for faculty,* DePaul University (March 30, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-30-20.aspx (last visited May 11, 2020).
[21] *Id.*
[22] *Id.*
[23] *Id.*

41.     Meanwhile, however, students are expected to pay full tuition—tuition that was meant to go towards a hands-on, interactive, in-person, immersive education in the vibrant city of Chicago. Inexplicably, despite the forced shift to online, remote learning, DePaul has maintained to students that their "educational experience" would be unchanged. DePaul wrote to students in a March 23, 2020, email: "We promise you: the education you receive in the Spring will still be a DePaul education." [24]

42.     This is simply not possible. Not only have Defendants recognized that online classes are an "experiment," but, by closing down its campuses, Defendants have also denied DePaul University students access to the opportunities that attracted them to the DePaul University in the first place.

43.     The remote, online "classes" offered since March deprive Spring 2020 students of access to their peers, faculty, facilities, materials, and other critical learning opportunities. These classes are not equivalent to the in-person, on-campus educational experience that Plaintiffs and other DePaul University students chose for their university education. The tuition that DePaul University charged its students were predicated on, *inter alia*, students' constant interaction with and feedback from peers, mentors, professors, and guest lecturers; use of technology and laboratories; leverage of connections and organizations across the city of Chicago; and participation in internships and extracurricular groups.

44.     Through this lawsuit, Plaintiffs seek—for themselves and the other Class members—Defendants' disgorgement of the pro-rated portion of the tuition and fees for the educational and other services they did not receive for the Spring 2020 Quarter and the

---

[24] *Provost message to students with Spring course information*, DePaul University (March 23, 2020), https://resources.depaul.edu/coronavirus-covid-19-updates/updates/Pages/3-23-20-provost-message.aspx (last visited May 11, 2020).

remainder of the Spring 2020 Semester when classes moved online and campus services ceased being provided.

## **CLASS ACTION ALLEGATIONS**

45.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiffs bring this action on behalf of themselves and the following Class:

> All persons who paid DePaul University tuition and/or fees for in-person education for the Spring 2020 Quarter or Semester, the Summer 2020 Term, and/or one or both Summer 2020 Sessions

46.     A class action is a superior means to ensure the fair and efficient adjudication of this case. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against the Defendants. Moreover, individualized actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself. By contrast, by proceeding as a class action, the claims at issue can be adjudicated efficiently through economies of scale.

47.     **Numerosity.** In accordance with Fed. R. Civ. P. 23(a)(1), the members the proposed Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although the precise number of Class members is unknown presently to Plaintiff, the Class is presumed to number more than 40,000 people and is easily ascertainable through enrollment and financial records maintained by Defendants.

48.     **Commonality and Predominance.** In accordance with Fed. R. Civ. P 23(a)(1) and (b)(3), this action involves questions of law and fact common to the Class that predominate over any individual questions specific to any Class member. These include:

> a.   whether Defendants accepted money from the Class;

b. whether Defendants retained money from the Class for services it did not render, or only partially rendered;

c. whether Defendants entered into a contract with the Class;

d. whether Defendants breached its contract with the Class;

e. whether Defendants benefitted from the money it accepted from the Class;

f. whether the educational and other services Defendants provided to the Class were commensurate with their value;

g. whether certification of the Class is appropriate under Fed. R. Civ. P. 23;

h. whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

i. the amount and nature of relief to be awarded to Plaintiffs and the Class.

49. **Typicality.** Pursuant to Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and the other Class members each paid for certain costs associated with the Spring 2020 semester but were not provided the services that those costs were meant to cover. Each suffered damages in the form of their lost tuition, fees, and other monies paid to Defendant, and the claims all arise from the same USC practices and course of conduct. There are no defenses available that are unique to the Plaintiffs.

50. **Adequacy of Representation.** In accordance with Fed. R. Civ. P 23(a)(4), Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other proposed Class members. Moreover, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and they intend to prosecute this action vigorously on behalf of their fellow Class members. Plaintiffs have no interests that are antagonistic to those of the Class and they will fairly and adequately protect the proposed Class' rights along with counsel.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract

51.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1-50, above, as if fully alleged herein.

52.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

53.     Plaintiffs and the other members of the Class entered into binding contracts with Defendants, which provided that Plaintiffs and the members of the Class would pay tuition and fees to DePaul, in exchange for on-campus educational, social, and other facilities and experiences.

54.     As part of their contracts with DePaul, and in exchange for adequate consideration that Plaintiffs and members of the proposed Class provided, Defendants promised to provide educational and campus services during the Spring 2020 Quarter and/or Semester, Summer 2020 Term, and Summer 2020 Sessions.

55.     Defendants failed to provide the services that they were obligated to perform under their contracts with Plaintiffs and the proposed Class. Defendants have retained tuition and fees paid by Plaintiffs and the other members of the Class for the full Spring 2020 Quarter or Semester, Summer 2020 Term, and Summer 2020 Sessions without providing them the promised benefits.

56.     By contrast, Plaintiffs and the other members of the Class fulfilled their end of the bargain when they paid the monies due and owing for their full tuition and fees for the Spring 2020 Quarter or Semester, Summer 2020 Term, and Summer 2020 Sessions.

57.     The tuition and fees that Plaintiffs and the proposed Class paid were intended to cover in-person educational and extra-curricular services from March 28 through June 12, 2020,

16

for the Spring 2020 Quarter; January 13 through May 14, 2020, for the DePaul University College of Law Spring 2020 Semester; June 15 through August 23, 2020, for the Summer 2020 Term; June 15 through July 19, 2020, for 2020 Summer Session I; and July 20 through August 23, 2020, for 2020 Summer Session II.

58.     Defendants, however, failed to provide the services due under the contracts for those entire time periods, yet have improperly retained the funds Plaintiffs and the proposed Class paid for their tuition and fees, without providing them the services and other benefits due under the contracts.

59.     Plaintiffs and members of the Class have suffered damages as a direct and proximate result of Defendants' breach, including being deprived of the education, experience, and services that they were promised and expected to obtain, and for which they have paid. They are entitled to damages including but not limited to prorated reimbursement of the tuition, fees, and other expenses that were collected by Defendants for services that Defendants failed to fully deliver.

60.     Defendants' performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendants would nevertheless be required to return the funds received for services and/or goods that it did not provide.

## COUNT II
## Restitution Based On Quasi-Contract

61.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1-60, above, as if fully alleged herein.

62.     Plaintiffs bring this claim on behalf of themselves and the proposed Class in the alternative to the breach of contract claim brought in Count I.

63.     Plaintiffs and other members of the proposed Class conferred a benefit on Defendants in the form of payments of tuition and required fees to Defendants at the expense of Plaintiffs and the other members of the Class.

64.     Defendants have retained the benefit paid by Plaintiffs and the Class despite their failure to provide the services for which the benefit was paid, to the detriment of Plaintiffs and the Class.

65.     Plaintiffs and the other members of the Class did not receive the full benefit of their bargain from Defendants.

66.     There is no justification or cause for Defendants' failure to return the portion of the tuition and fees that Defendants has unjustifiably retained despite their failure to complete the services for which Plaintiffs provided the funds to Defendants. Defendants' retention of such funds therefore violate fundamental principles of justice, equity, and good conscience.

67.     Accordingly, Defendants has been unjustly enriched and should pay as restitution a pro-rated portion of the funds that Plaintiffs and the proposed Class paid for tuition and fees.

**COUNT III**
**Conversion**

68.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1-67, above, as if fully alleged herein.

69.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

70.     Plaintiffs and the other members of the Class have a right to the in-person educational and extra-curricular services that they were supposed to be provided in exchange for their payments to Defendants.

71.     Defendants intentionally interfered with the rights of Plaintiffs and the other members of the proposed Class when they retained fees intended to pay for on-campus classes,

facilities, activities, and other educational services, while moving all classes to an online, remote learning format and discontinuing services and access to facilities for which Plaintiffs and the members of the proposed Class had paid.

72.     Defendants deprived Plaintiffs and the other members of the Class of their fees or of the right to the services for which their fees were intended to be used.

73.     Class members requested that DePaul issue partial tuition and fee reimbursements for the Spring 2020 Quarter and Semester.

74.     Defendants' retention of the fees paid by Plaintiffs and the other members of the Class without providing the services for which they paid deprived Plaintiffs and the Class of the benefits for which the fees were paid. This interference with the services for which Plaintiffs and the other members of the Class paid damaged Plaintiffs and the Class in that they paid fees for services that were not and will not be provided.

75.     Plaintiffs and the other members of the Class are entitled to the return of prorated portion of the tuition and fees paid for the Spring 2020 Quarter or Semester, Summer 2020 Term, and Summer 2020 Sessions.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.     Certifying the Class as requested herein, designating Plaintiffs as Class representatives, and appointing the undersigned counsel as Class Counsel;

b.     Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

c.     Declaring that Defendants wrongfully kept the monies paid by the Class;

d.      Awarding injunctive relief as permitted by law or equity;

e.      Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

f.      Awarding pre- and post-judgment interest on any amounts awarded; and

g.      Awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure on all causes of action so triable.


Dated:  May 12, 2020                              /s/ Richard D. Schwartz
                                                  Richard D. Schwartz
                                                  Shanon J. Carson
                                                  Ellen T. Noteware
                                                  Joshua T. Ripley
                                                  **BERGER MONTAGUE PC**
                                                  1818 Market Street, Suite 3600
                                                  Philadelphia, PA 19103
                                                  Tel: (215) 875-3000
                                                  Fax: (215) 875-4604
                                                  rschwartz@bm.net
                                                  scarson@bm.net
                                                  enoteware@bm.net
                                                  jripley@bm.net

                                                  E. Michelle Drake
                                                  Joseph Hashmall
                                                  **BERGER MONTAGUE PC**
                                                  Minneapolis, MN
                                                  Tel: (215) 875-3000
                                                  Fax: (215) 875-4604
                                                  emdrake@bm.net
                                                  jhashmall@bm.net

                                                  Amit Bindra
                                                  Kristen Prinz
                                                  **THE PRINZ LAW FIRM, P.C.**
                                                  One East Wacker, Suite 2500
                                                  Chicago, IL 60601
                                                  Tel: (312) 212-4450
                                                  Fax: (312) 284-4822
                                                  abindra@prinz-lawfirm.com

kprinz@prinz-lawfirm.com

*Counsel for Plaintiffs and the Proposed Class*